UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SHAWN P. WILLIS,<br><br>Plaintiff,<br><br>vs.<br><br>CORRECTIONAL MEDICAL MANAGEMENT, in official capacity; ANTHONY HELLAND, Director of Operations at C.M.M., in individual and official capacity; STACY, Psychiatric Nurse Provider at C.M.M., in individual and official capacity; and MEGHAN, Director of Nursing at C.M.M., in individual and official capacity,<br><br>Defendants. | 4:25-CV-04127-RAL<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff Shawn P. Willis, currently an inmate at the Brookings County Jail, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983 while he was incarcerated at the Minnehaha County Jail. Docs. 1, 6. Willis filed a motion for leave to proceed in forma pauperis and provided a completed prisoner trust account report. Docs. 2, 3.

I.      **Motion for Leave to Proceed In Forma Pauperis**

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). At the time Willis filed his complaint and motion to proceed in forma pauperis, he was an inmate at the Minnehaha County Jail. Docs. 1, 2. But before the Court ruled on Willis's motion for leave to proceed in forma pauperis, it appears that he was released[1] and

---

[1] Willis is no longer listed as an inmate on the inmate listing portal for the Minnehaha County Jail. See Who's Behind Bars, Minnehaha County Sheriff's Office,

subsequently returned to custody. See Doc. 6 at 1 (listing Willis's new address as the Brookings County Jail). A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c). Because "[a] plaintiff's prisoner status is determined at the time when he filed the action[,]" the PLRA applies to Willis because he filed his complaint while incarcerated.[2] Keith v. Summers, No. 4:24-CV-04077-LLP, 2025 WL 267049, at *1 (D.S.D. Jan. 21, 2025) (collecting cases).

Because a prisoner seeking in forma pauperis status must pay the full filing fee under the PLRA, "the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

---

https://web.minnehahacounty.gov/dept/so/jailInmateInfo/jailInmateInfoSearchResults.php?g-recaptcha-response=&action=search&txtLastName=willis&btnSearch=Search  (last visited Mar. 20, 2026).

[2] Circuit courts are split on whether the PLRA continues to apply after the prisoner is released during litigation. See Carson v. Tulsa Police Dep't, 266 F. App'x 763, 766–67 (10th Cir. 2008) (describing split in authority); see also Domino v. Garland, No. 20-CV-2583, 2021 WL 1221188, at *1 n.3 (D. Minn. Apr. 1, 2021). Courts within the Eighth Circuit, and within the District of South Dakota, have held that if a prisoner filed the action while in custody, the prisoner remains liable for the filing fee even if he is later released from custody. See Bell v. Mattson, No. 4:24-CV-04179-KES, 2025 WL 1249453, at *2 (D.S.D. Apr. 30, 2025) (collecting cases). This Court need not undertake this analysis, however, as courts within the District of South Dakota have noted that a prisoner who files a complaint while in custody and is subsequently released will be subject to the provisions of § 1915(b)(2) should he return to custody. Id. at *3 n.1 (citations omitted).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Willis's certified prisoner trust account report shows an average monthly deposit of $75.79 and an average monthly balance of $48.13. Doc. 3 at 1. Because Willis would owe more than his current balance as his initial partial filing fee, the Court grants Willis leave to proceed in forma pauperis and waives his initial partial filing fee. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Willis must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the Court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Id. The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Willis's institution. Willis remains responsible for the entire $350 filing fee as long as he is a prisoner. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.    1915A Screening[3]

### A.    Factual Background as Alleged by Willis

Willis sues Correctional Medical Management[4] ("CMM"), Anthony Helland (Director of Operations at CMM), Stacy (a psychiatric nurse provider at CMM), and Meghan (Director of Nursing at CMM) based on alleged violations of his Eighth Amendment rights while he was incarcerated at the Minnehaha County Jail. Doc. 1 at 1, 3–4. Willis alleges that each of these defendants followed a "blanket policy" that resulted in Willis not receiving "proper care and consideration for serious medical needs[.]" Id. at 2.

In Count I of his complaint, Willis alleges that while at the Minnehaha County Jail, he was not able to receive proper medical treatment, he was denied access "to medical personnel with necessary specialized expertise[,]" and that the defendants failed to "carry out medical orders" and continue Willis on the treatment plan and medication regimen he had "been on for years[] under [his] Primary Care Physician." Id. at 3. Willis alleges that the "[p]syche [sic] provider was aware of [his] diagnosis and specific reasoning behind [his] medication regimine [sic] but still failed to honor [his] long established treatment plan." Id. Willis alleges that this "[i]nterference with medical judgment [sic]" was unrelated to his medical needs, and was instead due to the policies in place and a "severe lack of properly licensed staff." Id. Willis alleges that this

---

[3] Because Willis filed this action while incarcerated, and because he has subsequently been returned to custody, the Court conducts this screening pursuant to § 1915A. See Domino, 2021 WL 1221188, at *1; see also Keith, 2025 WL 267049, at *1–2. But even if Willis's petition was not subject to a § 1915A screening, the Court's analysis would be the same under 28 U.S.C. § 1915(e). See Domino, 2021 WL 1221188, at *1 n.2.

[4] CMM is a private company that has contracted with the Minnehaha County Jail to provide medical services. Private companies act under color of state law when providing medical services in the jail and can be sued under § 1983. See West v. Atkins, 487 U.S. 42, 56 n.15 (1988); Davis v. Buchanan Cnty., 11 F.4th 604, 617 (8th Cir. 2021). For the purposes of screening, this Court assumes that CMM was acting under color of state law.

"[d]isregard shown by 'Health Service Admin' by refusing to properly answer [his] questions and address [his] serious medical needs despite [his] continued pleas for remedy and assistance" constitutes a violation of his Eighth Amendment rights. Id. As a result, Willis alleges that he has "Major Depressive Disorder and P.T.S.D. symptoms aggravated and re-occurring." Id. As further injuries, Willis alleges that he has suffered from "[l]ack of sleep due to severity of nightmares and constant depressive state. Poor peer interaction and ability to focus." Id.

Count II of Willis's complaint alleges an Eighth Amendment retaliation claim, based on Willis's allegation that "[t]he Directors have directly made and have overseen decisions made concerning my personal basic health care that has resulted in extreme difficulties addressing even simple daily health issues." Id. at 4. Willis alleges that even "[s]imple concerns and requests are quickly denied and disregarded, causing [him] to have to re-address everything through grievance process." Id. As injuries, Willis alleges that he has experienced "[e]xcessive stress and frustration from having to make sick call requests, but expecting refusal of care or proper consideration. Prolonged sick call process, resulting in issues unaddressed promptly." Id.

In his request for relief, Willis requests a declaratory judgment that (1) his "8th Amendment rights were violated by defendants [sic] conduct, failure to honor plaintiff's treatment plan that was commenced before incarceration, and failure to hold proper professional licenses" and (2) that the "defendants [sic] failure to take action has directly resulted in physical and mental harm and anguish upon plaintiff, showing deliberate indifference towards his serious medical needs[.]" Id. at 5 (capitalization in original omitted). Additionally, Willis requests an injunction ordering that the defendants "immediately remove unconstitutional blanket policy governing treatment types[,]" and that he "be afforded the individualized treatment plan established with his Primary Care Physician regarding psyche [sic] meds." Id. (capitalization in original omitted). Lastly, Willis

5

requests compensatory damages "jointly and severally against each defendant" and punitive damages "against defendants for physical and mental injury resulting from failure to provide constitutionally compliant healthcare." Id. (capitalization in original omitted). Willis sues CMM in its official capacity only, and sues Helland, Stacy, and Meghan in both their individual and official capacities. Id. at 2.

### B.    Legal Standard

Under 28 U.S.C. § 1915A, a court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A court screens a complaint filed by a prisoner under § 1915A when the "prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Several courts have held that "contractors of a department of corrections to provide medical services in a prison [were] considered government entities or officers for § 1915A purposes." Keith, 2025 WL 267049, at *2 (collecting cases); Borger v. Welbig, No. 4:24-CV-04090-ECS, 2025 WL 1111312, at *3 (D.S.D. Apr. 15, 2025). Thus, this Court screens Willis's complaint under 28 U.S.C. § 1915A.[5]

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin

---

[5] Even if these defendants were not government actors under § 1915A and not subject to screening under § 1915A, this Court's analysis would be the same under 28 U.S.C. § 1915(e).

6

v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]"  550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 556). This Court now screens Willis's complaint under 28 U.S.C. § 1915A.

7

C.      **Legal Analysis**

1.      **Claims for Declaratory and Injunctive Relief Against All Defendants**

Willis makes requests for declaratory and injunctive relief, all of which are related to his confinement. See Doc. 1 at 3–5. The United States Court of Appeals for the Eighth Circuit has held, however, that an "inmate's claims for declaratory and injunctive relief are moot when he is transferred to another facility and is no longer subject to alleged unlawful conditions." Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 835 (8th Cir. 2009) (citing Pratt v. Corr. Corp. of Am., 267 F. App'x 482, 482 (8th Cir. 2008) (per curiam)); see also Brazil v. Ark. Dep't of Hum. Servs., 892 F.3d 957, 960 (8th Cir. 2018) (noting that "[i]t makes no difference that it is theoretically possible that the plaintiff could return to the original facility and once again face the same conditions[]" when holding that "an action seeking an injunction to alter prison conditions becomes moot once the plaintiff transfers to another facility."). As stated earlier, it appears that Willis has been released from the Minnehaha County Jail, where he filed his complaint from, and was recently returned to custody at a different facility. See Doc. 1 at 1; Doc. 6 at 1. Therefore, Willis's claims for injunctive and declaratory relief against all defendants are dismissed without prejudice as moot under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2.      **Claims Against CMM and CMM Employees in their Official Capacities**

Willis sues CMM and Helland, Stacy, and Meghan (CMM employees) for violations of his Eighth Amendment rights. Doc. 1 at 2–4. Under § 1983, a corporation cannot be held vicariously liable for the acts of its employees. Burke v. N.D. Dep't of Corr. & Rehab., 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam) (citing Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975–76 (8th Cir. 1993)). "[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. The proper test is whether there is a policy, custom or action

8

by those who represent official policy that inflicts injury actionable under § 1983." Sanders, 984 F.2d at 975–76 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 694 (1978)). Because official capacity claims are construed as claims against the individual's employer, Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999), this Court evaluates Willis's official capacity claims against CMM employees together with Willis's claims against CMM. [6] See also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) ("A § 1983 action against a government official in his official capacity . . . is *not* a suit against the official personally, for the real party in interest is the entity." (emphasis in original) (internal citations omitted)).

"To support a claim against a corporation acting under color of state law, plaintiff 'must show that there was a policy, custom, or official action that inflicted an actionable injury.'" Phillips v. Rose, No. 4:23-CV-00825-JSD, 2023 WL 5748434, at *6 (E.D. Mo. Sept. 6, 2023) (quoting Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006)). "[T]o prove a policy, custom or action, [the plaintiff] must show 'a continuing, widespread, persistent pattern of unconstitutional misconduct'" by the corporation's employees. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (quoting S.J. v. Kansas City Mo. Pub. Sch. Dist., 294 F.3d 1025, 1028 (8th Cir. 2002)). A § 1983 complaint need not "specifically plead the existence of an

---

[6] "Some courts differ on whether official capacity claims against employees of companies who contract with a jail are construed as claims against the government or claims against the contractor." Keith, 2025 WL 267049, at *6. If this Court construes Willis's official capacity claims against CMM employees as claims against Minnehaha County, the county government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Monell, 436 U.S. at 690, 694. If this Court construes Willis's official capacity claims as claims against CMM, Willis must show that CMM had an unconstitutional policy or custom because vicarious liability is inapplicable to a corporation under § 1983. Sanders, 984 F.2d at 975–76. This Court need not decide here whether to construe claims against CMM employees as claims against CMM or Minnehaha County because either alternative requires that Willis allege the existence of a policy or custom.

unconstitutional policy or custom to survive a motion to dismiss." Id. (citing Doe ex rel. Doe v. Sch. Dist., 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must still include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. Id.; see also Doe, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Here, Willis alleges an Eighth Amendment deliberate indifference to serious medical needs claim, as well as an Eighth Amendment retaliation claim, based on CMM's "blanket policy governing treatment types with lack of consideration and disregard concerning serious medical needs[,]" and CMM employees' enforcement of this policy. Doc. 1 at 2–4. Liberally construing his complaint, this Court finds that Willis has stated enough facts to support the existence of an unconstitutional policy or custom. Therefore, this Court must consider whether Willis's rights were violated by this allegedly unconstitutional policy or custom.

### a.    Deliberate Indifference to Serious Medical Needs Claims

Willis claims that the defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment. Doc. 1 at 2–5. But because Willis was a pretrial detainee at the time the conduct alleged in his complaint occurred, see Doc. 5 at 1, his claims for inadequate medical care are analyzed under the Fourteenth Amendment's due process protections, rather than the Eighth Amendment. Davis v. Hall, 992 F.2d at 152. Because the Eighth Circuit has not established a different standard for this analysis, Willis's deliberate indifference claims under the Fourteenth Amendment may be examined under the same deliberate indifference standard as Eighth Amendment claims by convicted inmates. Id. at 152–53.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v.

10

Gamble, 429 U.S. 97, 104 (1976) (internal citation omitted) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will "mere disagreement with treatment decisions." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of Rosenberg, 56 F.3d at 37).

Willis alleges sufficient facts to show that CMM has a policy or custom of denying medication and treatment plans. Willis alleges that CMM has a "blanket policy" of denying medication, ignoring treatment plans, and denying "access to medical personnel with necessary specialized expertise[,]" and that he has suffered from "Major Depressive Disorder and P.T.S.D." as a result. Doc. 1 at 3. Liberally construing his complaint, Willis has stated a plausible claim under the Fourteenth Amendment. Therefore, Willis's Fourteenth Amendment deliberate indifference claims against CMM and CMM employees Hellard, Stacy, and Meghan, in their official capacities, survive § 1915A screening.

### b.    Retaliation Claims

Willis alleges an Eighth Amendment retaliation claim against CMM, Helland, Stacy, and Meghan based on the retaliation he alleges he received as a consequence of filing various healthcare-related grievances. Doc. 1 at 4. "A prisoner's Eighth Amendment rights are violated if prison officials impose a disciplinary sanction against a prisoner in retaliation for the prisoner's

11

exercise of his constitutional right." Meuir v. Greene Cnty. Jail Emp., 487 F.3d 1115, 1119 (8th Cir. 2007) (citation modified). To state an Eighth Amendment retaliatory discipline claim, a plaintiff must show that: "(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." Haynes v. Stephenson, 588 F.3d 1152, 1155 (8th Cir. 2009) (citing Meuir, 487 F.3d at 1119).

Here, it is not clear from Willis's complaint that he faced any disciplinary action, such as being transferred or receiving a disciplinary report. See Doc. 1 at 4; see also Williams v. Horner, 403 F. App'x 138, 140 (8th Cir. 2010) (per curiam) ("we have consistently found the filing of a disciplinary action against an inmate, if done in retaliation for the inmate's use of the grievance procedure against prison staff, is allegation sufficient to survive dismissal at the pleading stage."); Goff v. Burton, 7 F.3d 734, 737–38 (8th Cir. 1993) (discussing retaliatory transfers). Liberally construing his complaint, Willis's Eighth Amendment retaliation claims are more accurately characterized as First Amendment retaliation claims, and analyzes them as such.

To allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer v. Jackson Cnty., 738 F.3d 907, 911 (8th Cir. 2013) (quoting Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]." Revels, 382 F.3d at 876. "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994)).

12

To state a claim for First Amendment retaliation, Willis must allege that CMM had a policy of retaliating against inmates who attempted to engage in protected activities. See Schurman v. Payer, No. 4:21-CV-04156-KES, 2022 WL 60466, at *4 (D.S.D. Jan. 6, 2022). Willis alleges that he filed grievances, a protected activity under Jacks. Doc. 1 at 3–4; Jacks, 486 F.3d at 1029 (citing Dixon, 38 F.3d at 379). Because he filed these grievances, Willis alleges that he faced "extreme difficulties addressing even simple daily health issues[]" and that "even simple concerns and requests [were] quickly denied and disregarded[,]" both ostensibly due to the "blanket policy" referenced throughout Willis's complaint. Doc. 1 at 4. Therefore, at this stage of the proceeding, this Court finds that Willis has stated a plausible claim that CMM's policy caused the retaliation Willis experienced. Therefore, Willis's First Amendment retaliation claims against CMM, Helland, Stacy, and Meghan in their official capacities survive § 1915A screening.

### 3.    Individual Capacity Claims Against CMM Employees

Willis sues Helland, Stacy, and Meghan in their individual capacities and seeks monetary relief. Doc. 1 at 2, 5. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). In other words, Willis's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See id.

13

### a.    Deliberate Indifference to Serious Medical Needs Claims

Willis claims that the defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment. Doc. 1 at 2–5. Because Willis was a pretrial detainee at the time the alleged constitutional violation occurred, his claims are construed as Fourteenth Amendment claims. Davis v. Hall, 992 F.2d at 152. As discussed above, Fourteenth Amendment claims for deliberate indifference may be examined under the same deliberate indifference standard as Eighth Amendment claims by convicted inmates. See supra, at 10. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citation omitted) (quoting Gregg, 428 U.S. at 173). "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will "mere disagreement with treatment decisions." Jolly, 205 F.3d at 1096 (citation omitted).

The deliberate indifference standard includes "both an objective and a subjective component." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). "The plaintiff[] must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). The Eighth Circuit has defined a serious medical need as one that has been diagnosed by a physician and requires treatment. Presson v. Reed, 65 F.4th 357, 366 (8th Cir. 2023) (citing Davis v. Buchanan Cnty., 11 F.4th 604, 623–24 (8th Cir. 2021)). Here, Willis has sufficiently alleged enough facts to show that he meets the objective prong. He states that his Primary Care Physician developed a treatment plan and medication regimen for him, Doc. 1 at 3, which is sufficient at this stage of pleading to establish a

serious medical need under the first prong.  To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (8th Cir. 1994).  This Court now analyzes whether Willis has sufficiently pled that each defendant had the requisite knowledge to meet the second, subjective prong.

Beginning with Willis's claims against Stacy, the psychiatric nurse provider, Willis has pled enough facts to establish this second prong.  Willis alleges that there was a "[f]ailure to carry out medical orders, being treatment plan and medication reginime [sic] I've been on for years, under my Primary Care Physician."  Doc. 1 at 3.  Willis specifically alleges that the "Psyche Provider[,]" presumably Stacy, "was aware of [Willis's] diagnosis and specific reasoning behind [his] medication regimine [sic] but still failed to honor [his] long established treatment plan." Id. Therefore, Willis's Fourteenth Amendment deliberate indifference claim against Stacy in her individual capacity for monetary damages survives § 1915A screening.

Willis also alleges deliberate indifference claims against Helland (Director of Operations at CMM) and Meghan (Director of Nursing at CMM) in their individual capacities.  Doc. 1 at 2, 3. Because Willis does not allege that either Helland or Meghan directly participated in his medical treatment, this Court liberally construes Willis's claims against Helland and Meghan as individual capacity claims based on a failure to train or supervise. See Davis v. Buchanan Cnty., 11 F.4th at 624 ("A supervisor may be liable under section 1983 if their 'failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.'" (quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996)).

When a supervisor's liability is premised on the supervisor's failure to train or supervise, as opposed to direct participation, the plaintiff must show that the supervisor "(1) received notice

15

of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts.'" Id. (quoting S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015)). "Allegations of generalized notice are insufficient[,]" Krigbaum, 808 F.3d at 340, and a supervisor's "mere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under Section 1983[,]" Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994) (citation omitted).

Here, Willis alleges that there was a "blanket policy" of denying necessary medication and medical treatment. Doc. 1 at 3. Willis alleges that "'Health Service Admin' . . . refus[ed] to properly answer [his] questions and address [his] serious medical needs despite [his] continued pleas for remedy and assistance." Id. At this stage of pleading, this Court finds that Willis has stated a plausible claim for deliberate indifference under the Fourteenth Amendment based on a failure to train or supervise. Therefore, his Fourteenth Amendment deliberate indifference claims against Helland and Meghan in their individual capacities survive § 1915A screening.

### b. Retaliation Claims

Willis also brings a First Amendment retaliation claim[7] against Helland, Stacy, and Meghan in their individual capacities. Doc. 1 at 2, 4. As stated above, to allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer, 738 F.3d at 911 (quotation omitted). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]."

---

[7] As discussed above, the Court liberally construes Willis's complaint to be asserting First Amendment retaliation claims as opposed to Eighth Amendment retaliation claims.

Revels, 382 F.3d at 876. "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." Jacks, 486 F.3d at 1029 (citation omitted). As discussed above, Willis meets the first prong because he engaged in the protected activity of filing grievances.

Willis's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused it to occur through a failure to train or supervise. See Parrish, 594 F.3d at 1001. As this Court understands his complaint, Willis is alleging that because he filed grievances, further requests he made were "quickly denied and disregarded[]" by the defendants, resulting in "extreme difficulties addressing even simple daily health issues[,]" and an inability to receive access to his medication and treatment plan. Doc. 1 at 3–4. At this time, the Court finds that Willis has stated a plausible First Amendment retaliation claim against the defendants. Therefore, Willis's First Amendment retaliation claim against Helland, Stacy, and Meghan in their individual capacities survives § 1915A screening.

### III.    Motion to Appoint Counsel

Willis also filed a motion to appoint counsel. Doc. 5. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. Id. At this time, Willis's claims do not appear to be complex, and he is able to investigate the facts and present his claims adequately. This Court believes that Willis is capable of pursuing his claims pro se at this phase of litigation, and his motion to appoint counsel, Doc. 5, is denied at this time.

## IV.    Conclusion

Accordingly, it is

ORDERED that Willis's motion for leave to proceed in forma pauperis, Doc. 2, is granted. It is further

ORDERED that the Clerk of Court shall send a copy of this order to the appropriate financial official at Willis's institution.  It is further

ORDERED that the institution having custody of Willis is directed that whenever the amount in Willis's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Willis's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.  It is further

ORDERED that Willis's motion to appoint counsel, Doc. 5, is denied.  It is further

ORDERED that Willis's claims for injunctive and declaratory relief against all defendants are dismissed without prejudice as moot under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

ORDERED that Willis's Fourteenth Amendment deliberate indifference claims against CMM, and CMM employees Hellard, Stacy, and Meghan, in their individual and official capacities, survive § 1915A screening.  It is further

ORDERED that Willis's First Amendment retaliation claim against CMM, and Helland, Stacy, and Meghan, in their individual and official capacities, survives § 1915A screening.  It is further

ORDERED that the Clerk shall send four blank summons forms and Marshal Service Forms (Form USM-285) to Willis so that he may cause the complaint to be served upon the defendants, CMM, Helland, Stacy, and Meghan.  It is further

ORDERED that Willis shall complete and send the Clerk of Courts summons and USM-285 forms for the defendants. Upon receipt of the completed summonses and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summonses and USM-285 forms are not submitted as directed within 30 days of the date of this order, the action may be dismissed for failure to prosecute. It is further

ORDERED that the United States Marshal Service shall serve the completed summonses, together with a copy of the complaint, Doc. 1, and this order, upon the defendants. It is further

ORDERED that the defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that Willis will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

DATED March 20th, 2026.

BY THE COURT:

_____

ROBERTO A. LANGE
CHIEF JUDGE

19